**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **CHIU YUEN TO, on behalf of himself and all similarly situated persons,** ) ) ) | |
| **Plaintiff,** ) | **Case No. 2:22-cv-02021-JTF-tmp** |
| **v.** ) ) | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,** ) ) ) | |
| **Defendants.** ) | |

**ORDER GRANTING STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS**

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss, filed on February 8, 2022. (ECF No. 20.) Plaintiff Chiu Yuen To filed a Response in opposition on March 8, 2022. (ECF No. 31.) State Farm then filed a Reply on March 22, 2022. (ECF No. 33.) For good cause shown, the Motion is **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*1.  Facts of the Complaint*

Underlying the present case is a car crash that occurred on November 9, 2018. (ECF No. 1-2, 5.) To alleges that he had "just purchased a 2015 Ferrari California and was driving it for the first time," and while "stopped at the traffic light on the off ramp of Highway 385 eastbound onto southbound Ridgeway Road" his "vehicle was rear-ended by Defendant [Robert] Tyler." (*Id.* at 12.) Tyler carried automobile insurance with GEICO, while To carried $100,000 in Uninsured Motor Vehicle Property Damage ("UMPD") coverage with State Farm, along with collision

coverage. (*Id.* at 5.) Tyler's coverage could not cover the full amount of repairs, and State Farm "accepted state-minimum limits from GEICO and released its subrogation claims[.]" (*Id.*) The damage was extensive and the car was sent to Atlanta, Georgia for repairs, which "deprived [To] of the use of his vehicle for seventy-six (76) days while it was being repaired." (*Id.* at 9.) To determined that a similar rental vehicle would cost $895 per day, but never rented a replacement car. (*Id.*)

To's claims arise not from disputes over repair cost but from this alleged loss of use. "In early 2019," To submitted a claim for loss of use based on the $895 rate for 76 days.[1] (ECF No. 1-2, 9.) On August 17, 2020, State Farm told To that it would only pay loss of use up to $1,274.40, due to his failure to actually rent a replacement car and "lack of a business need for a similar vehicle." (*Id.*) To alleges that State Farm reached this amount by calculating his "loss of use at $1,774.40, but then had silently and surreptitiously deducted $500 for its loss of use payment as a deductible under Plaintiff's collision coverage rather than under his UMPD coverage." (*Id.*) While initially unaware of this deductible, To was alerted on July 12, 2021, when he received "an itemization of the monies paid out under his insurance policy" from claim specialist Mike Warren.[2] (*Id.* at 10.) After being so alerted, To sent State Farm a "Bad Faith Demand Letter pursuant to Tennessee Code Annotated § 56-7-105 and demanded among other damages loss of use in the amount of $68,020." (*Id.*) State Farm sent To a check for $36,226 for "undisputed loss of use" on August 31, 2022 but refused to pay any further. (*Id.*)

To states that this "illegal, misclassified deductible" was "unlawfully imposed" and that this is a common practice of State Farm. (*Id.*) As a result, he makes class allegations on behalf of

---

[1] This would equate to a claim of $68,020.

[2] State Farm disputes that To was ever charged a deductible but grants it as true for purposes of the motion. (ECF No. 20-1, 6 n.4.)

two proposed statewide classes: the "Illegal Deductible Class" and the "Loss of Use Class." The

Illegal Deductible Class consists of:

> Plaintiff and all similarly situated persons and entities who were insured by
> Defendant State Farm under an insurance policy issued in Tennessee for motor
> collision and uninsured motorist property damage coverage and submitted an
> uninsured motorist claim to Defendant State Farm where it assessed an illegal
> deductible under the Tennessee UM Statute [from November 9, 2016 to the
> present].

(ECF No. 1-2, 11.) The Loss of Use Class consists of:

> Plaintiff and all similarly situated persons and entities who were insured by
> Defendant State Farm under an insurance policy issued in Tennessee for uninsured
> motorist property damage coverage and submitted an uninsured motorist claim for
> loss of use damages, whether incurred or not, to Defendant State Farm under the
> Tennessee UM Statute [from November 9, 2016 to the present].

(*Id.*) To also lists eight causes of action: Breach of Contract, Loss of Use, Breach of the Implied

Duty of Good Faith and Fair Dealing, Conversion, and "Declaratory Judgment" against State

Farm, as well as an individual Negligence claim against Tyler. (*Id.* at 11, 17-20.)

*2.   To's Policy with State Farm*

To's policy with State Farm ("the Policy") is central to the present motion, and the

complaint is heavily concerned with the rights, procedures, and obligations set forth in the Policy.

State Farm attached a copy of the Policy to the present motion. "When a document is referred to

in the pleadings and is integral to the claims, it may be considered without converting a motion to

dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,

508 F.3d 327, 335-36 (6th Cir. 2007). The Court will thus outline the relevant portions of the

Policy below.

The Uninsured Motor Vehicle ("UM") coverage section of the policy defines "property

damage" as damage to "your car or a newly acquired car or property owned by an insured while

in your car or a newly acquired car." (ECF No. 20-2, 16.) UM coverage for Bodily Injury and

Property Damage will "pay compensatory damages for bodily injury and damages for property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle." (*Id.*) The Policy also contains an exclusion "for the first $200 of property damage resulting from any one accident," unless the vehicle involved in the accident "is insured for Collision Coverage under any policy issued by State Farm" and "the driver of the *other* vehicle has been positively identified and is solely at fault." (*Id.*) (emphasis added).

The Policy states that "[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions of this policy." (*Id.* at 20.) Legal action regarding UM coverage can only be brought "if the insured or that insured's legal representative within two years immediately following the date of the accident: (1) presents an Uninsured Motor Vehicle Coverage claim to [State Farm]; and (2) files a lawsuit in accordance with the Deciding Fault and Amount provisions of this coverage." (*Id.*) The Deciding Fault and Amount provisions state that the insured and State Farm must "agree to the answers to the following two questions":

> (1) Is the insured legally entitled to collect compensatory damages from the owner or driver of the uninsured motor vehicle?
>
> (2) If the answer to [the] above is yes, then what is the amount of the compensatory damages that the insured is legally entitled to collect from the owner or driver of the uninsured motor vehicle?

(ECF No. 20-2, 16.) If there is no agreement as to either of the answers, then the insured must "file a lawsuit, in a state or federal court that has jurisdiction, against (a) [State Farm]; (b) the owner and driver of the uninsured motor vehicle unless [State Farm has] consented to a settlement offer proposed by or on behalf of such owner or driver; and (c) any other party or parties who may be legally liable for the insured's damages[.]" (*Id.*)

3. *Procedural History*

To filed his complaint on November 9, 2021, in the Circuit Court of Shelby County, Tennessee. (*Id.* at 4.) State Farm removed the case to this Court on January 18, 2022. (ECF No. 1.) On February 8, 2022, State Farm filed the present motion and a Motion to Strike Class Allegations. (ECF Nos. 20 & 21.) To filed responses to both motions on March 8, 2022. (ECF Nos. 31 & 32.) State Farm filed a final reply on March 22, 2022. (ECF No. 33.) In their Motion, State Farm argues that To cannot pursue direct claims naming State Farm, that To's claims naming State Farm are time-barred, and that State Farm cannot be liable for the claimed damages since loss of use is not "property damage" under the relevant Policy and because To has no claim against Tyler for loss of use. State Farm further argues that To has failed to adequately plead his claims for breach of contract, breach of the duty of good faith and fair dealing, conversion, declaratory relief, and negligence.

## II.    LEGAL STANDARD

Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint

need not contain detailed facts, its factual assertions must be substantial enough to raise a right to relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679. Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

### III.     LEGAL ANALYSIS

*1.  Are To's Claims Time-Barred?*

As a preliminary matter, State Farm argues that To's claims are time-barred due to the two-year limitations period applicable to all claims arising from the Policy. (ECF No. 20-1, 11.) The Policy's UM coverage section states that all claims against State Farm must be brought "within two years immediately following the date of the accident[.]" (ECF No. 20-2, 20.) The accident occurred on November 19, 2018, and To filed the present suit on November 9, 2021. To does not

dispute that that this provision applies, but argues that under Tennessee law, the two-year period was tolled until State Farm "denied Plaintiff's full loss of use claim on August 17, 2020." (ECF No. 26, 14.)

Under Tennessee law, "an insurance policy provision establishing an agreed limitations period within which suit may be filed against the company is valid and enforceable." *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 396 (Tenn. Ct. App. 2010) (quoting *Brick Church Trans., Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 329 (Tenn. Ct. App. 2003)). Tennessee courts have generally "interpreted insurance policies containing language requiring a claim to be brought within so many days after a property loss, but which protect the insurer from suit until after a settlement period, as meaning that suit must be brought within so many days after the cause of action accrues." *Meyers v. Farmers Aid Ass'n of Loudon Cnty.*, No. E2013-02585-COA-R9-CV, 2014 WL 6889643, at *3 (Tenn. Ct. App. Dec. 9, 2014) (quoting *Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002)). Since an insurer is immune from suit during a settlement period, the cause of action accrues once the "immunity period has expired, rather than on the date of the actual loss." *Id.* But an insurer waives immunity if they deny the claim by the insured before the end of the settlement period, with the cause of action then accruing on the date of the denial. *Id.* (citing *Home Ins. Co. v. Hancock*, 106 Tenn. 513 (Tenn. 1900); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938)).

State Farm argues that there is no "settlement period" in the Policy that provides them with immunity from suit, "rather, the Policy states a claim for UM benefits must be made, and that claim can be pursued in a lawsuit if there is no agreement as to those benefits." (ECF No. 33, 10.) The Court disagrees. The cases above do not focus on whether a period of immunity is called a "settlement period" or not, they focus on whether a period of immunity exists at all. *See*

7

*Transcarriers*, 107 S.W.3d at 499-500 ("Rather, such cases have recognized that it is inequitable for the insurer to effectively shorten the period in which a cause of action could be maintained by granting itself a period in which it is immune from suit while the limitations period is slipping away. The *immunity period* therefore postpones the accrual of the insured's action.") (emphasis added) (internal citations omitted). The Policy unquestionably grants State Farm an immunity period: insureds are not permitted to file suit regarding UM coverage unless the lawsuit is "in accordance with the Deciding Fault and Amount provisions of this coverage." (ECF No. 20-2, 20.) The Policy's Deciding Fault and Amount provisions prevent suit unless State Farm and the insured disagree over either the insured's entitlement to compensatory damages or the amount of those damages. *Id.* Until disagreement is noted, the insured may not file suit.[3] This immunity period serves the exact same purpose as a pre-suit "settlement period" in that it allows the insured and the insurer to reach agreement on a payout of benefits.

State Farm also argues that none of the other cases involved a claim for UM benefits, but it is unclear why this would matter. Tennessee's UM benefits statute does not set its own limitations period. Instead, the limitation period varies depending on the type of action a claimant brings, which State Farm's brief acknowledges.[4] (*see* ECF No. 33, 10) ("In the UM context – which involves a tort claim filed against a named tortfeasor and the UM carrier as an unnamed

---

[3] To cites numerous cases in which State Farm has moved to dismiss suits based on a plaintiff's failure to comply with the Deciding Fault and Amount provisions, although none involved a dispute regarding limitations periods. *See Hall-Lopez v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02017-HLT, 2021 U.S. Dist. LEXIS 152512, at *9-10 (D. Kan. Aug. 13, 2021); *Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp.3d 1176, 1181-1183 (D. Nev. 2015); *Gallow v. State Farm Ins. Co.*, No. 13-1351, 2013 U.S. Dist. LEXIS 196327 at *4 (E.D. Pa. Jul. 8, 2013).

[4] Since To brings only property damage claims and not any personal injury claims, the applicable statute of limitations under Tennessee law would be three years from the date of loss. Tenn. Code Ann. § 28-3-105. Alternatively, for To's claims premised on State Farm's alleged violation of the Policy, the statute of limitations would be six years. *Davis v. Grange Mut. Cas. Group*, No. M2016-02239-COA-R3-CV, 2017 WL 4331041, at *3 (Tenn. Ct. App. Sept. 28, 2017) ("[A] suit against an uninsured motorist insurance carrier is ultimately an action in contract, giving rise to a six-year statute of limitations rather than the [tort statute of limitations].") (citing *Bates v. Greene*, No. W2016-01868-COA-R3-CV, 2017 WL 3206599, at *2 (Tenn. Ct. App. Jul. 27, 2017)).

defendant – the *applicable* limitations period begins to run on the date of the accident and the Policy simply mirrors this well-settled law.") (internal citations omitted) (emphasis added). Regardless, the applicable limitations period is that which the parties set by contract: two years. Under Tennessee law, a contractual limitations period is tolled until the cause of action accrues, which happens once any period of legal immunity for the insurer is either waived or expires. Under the terms of the Policy, State Farm had legal immunity until they disagreed with To over his entitlement to damages or the amount of those damages, which happened when State Farm denied his full loss of use claim on August 17, 2020. To filed suit on November 9, 2021, less than two years after his cause of action accrued. To's claims are not time barred.

*2.  Relevant Statutory Framework*

Central to To's substantive claims are multiple provisions of the Tennessee Uninsured Motorist statute ("UM Statute"). The undisputed portions of the UM statute form the foundation of the parties' arguments and thus must be discussed before any interpretation of the statute may be done. Most importantly, State Farm argues that To cannot maintain any direct claims against State Farm, as he has not followed the procedures required by the UM Statute. To has admittedly not followed these procedures but argues they do not apply to his claims, as discussed more below.

Uninsured Motor Vehicle Coverage is governed by statute in Tennessee, with the purpose of protecting "individuals who sustain injuries caused by uninsured motorists who cannot respond in damages." *Estate of Kirk ex rel. Kirk v. Lowe*, 70 S.W.3d 77, 80 (Tenn. Ct. App. 2001); Tenn. Code Ann. § 56-7-1201, *et seq.* The statute identifies two relevant kinds of Uninsured Motor Vehicle Coverage. First, Tennessee Code Annotated § 56-7-1201(a) thus requires every automobile policy in Tennessee to "include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the

policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease." This type of coverage is referred to elsewhere in the statute as Uninsured Motorist Bodily Injury ("UMBI") coverage. Second, Tennessee Code Annotated § 56-7-1201(c)(1) requires that "every insured purchasing [UMBI] coverage shall be provided an opportunity to include uninsured motorist property damage coverage, subject to provisions filed with and approved by the commissioner, applicable to losses in excess of [] $200." Uninsured Motorist Property Damage ("UMPD") coverage is at issue in this case. The $200 UMPD deductible does not apply if the vehicle involved in the accident has collision and UMPD coverage from the same insurer *and* the operator of the *other* vehicle has been "positively identified and is solely at fault." Tenn. Code Ann. § 1201(c)(1)(A)-(B). Both § 1201(a), dealing with UMBI coverage, and § 1201(c)(1), dealing with UMPD coverage, allow the insured to reject the coverage, but only in writing.

Any legal claims regarding these coverages are governed by a separate section of the statute, § 1206. An insured "'intending to rely on the coverage required by this part,' that is, the UM statute, must, if the insured files a lawsuit against the owner or operator of an uninsured vehicle, 'serve a copy of the process upon the insurance company issuing the [uninsured-motorist] policy . . . as though the insurance company were a party defendant.'" *Thompson v. TRW Automotives U.S. LLC*, No. 3:15-cv-01033, 2016 WL 3632989, at *5 (M.D. Tenn. Jul. 7, 2016) (quoting Tenn. Code Ann. § 56-7-1206(a)). As the Tennessee Supreme Court has previously held, "absent a specific policy provision authorizing a direct action, the [UM Statute] does not permit a plaintiff to bring suit directly against an uninsured motorist carrier." *Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 198 (Tenn. 2000) (citing *Glover v. Tenn. Farmers Mut. Ins. Co.*, 468 S.W.2d

727 (Tenn. 1971)). The Court supported this holding by noting that "disallowing such direct actions was prompted by a number of considerations, including: '(1) the insurer's right to remain anonymous; (2) the effect of direct suits on the insurer's statutory right of subrogation; and (3) the nature of the "protection" afforded by the uninsured motorist statutes.'"[5] (*Id.*) (quoting *Brewer v. Richardson*, 893 S.W.2d 935, 938 (Tenn. 1995)). The action against the owner or operator of the insured vehicle is inclusive, as even "coverage issues are to be litigated and determined in the original action, not in a subsequent independent action." *Gatlin v. Tenn. Farmers Mut. Ins. Co.*, 741 S.W.2d 324, 325 (Tenn. 1987). If the procedure is correctly followed, the insurer "shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name," providing a full opportunity to litigate all issues. Tenn. Code Ann. § 56-7-1206(a). Once the claimant is able to establish legal liability against the owner or operator of the uninsured vehicle, the claimant may then collect UM benefits in the amount of damages they are legally entitled too. *Winters v. Estate of Jones*, 932 S.W.2d 464, 465-66 (Tenn. Ct. App. 1996) (A plaintiff who fails to establish legal liability against a defendant tortfeasor cannot impose liability upon her uninsured motorist carrier for the acts of that same tortfeasor.).

3. *Can To Bring Direct Claims Against State Farm?*

---

[5] Further rationale for disallowing direct suits was provided in the underlying *Glover* case cited by the Tennessee Supreme Court in *Griffin*:

> The whole intent and purpose of the uninsured motorist act is, in essence, to provide *protection* by making the insurance carrier stand as the insurer of the uninsured motorist, with two necessary consequences. (1) The suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its policy limits, where it is afforded the statutory opportunity to defend the uninsured motorist.

*Griffin*, 468 S.W.2d at 730.

It is undisputed that To did not follow the procedure laid out in § 1206. He has directly sued both Tyler, the vehicle's owner/operator, and State Farm, the insurer. Where a suit under the UM statute does not follow the statute's required procedures, the typical remedy is dismissal of the action. *See Fults v. MetLife Auto & Home Ins. Agency, Inc.*, No. M2018-00647-COA-R3-CV, 2019 WL 1076487, at *2 (Tenn. Ct. App. Mar. 7, 2019). However, To maintains that he can bring direct claims against State Farm for three reasons, all based on his interpretation of the statute discussed above. First, To argues that the "direct-action provisions of Tennessee Code Annotated § 56-7-1206 apply [only] to claims involving UMBI," rather than UMPD coverage. Second, To supports this first claim by arguing that the statute clearly requires establishing the legal liability of the uninsured driver before bringing UMBI claims, but not UMPD claims. Finally, To states that State Farm expressly authorized a direct action in the Policy.

When construing statutes, the Tennessee Supreme Court has stated that the Court's purpose is "to ascertain and give effect to the intention and purpose of the legislature." *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000) (quoting *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)). If the statute's language is clear and unambiguous, then the Court should apply the plain language of the statute to resolve the issue. *Id.* But where the plain language "does not directly address the issue or leads to an absurd result [] this Court will look beyond the language of the statute and adopt a reasonable construction that provides for harmonious operation of the laws." *Id.* (citing *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

a. *Do the Direct Action Provisions Apply to UMPD Claims?*

To's main argument rests on a claimed distinction between UMBI and UMPD coverage. To does not dispute the operation of § 1206 to bar direct claims against State Farm for UMBI

12

coverage, but states that § 1206 does not apply to claims for UMPD coverage.  More specifically, To argues that under the terms of the statute, the bar on direct actions against insurers applies only to claims for "required coverage," and that § 1201 only requires UMBI coverage. (ECF No. 31, 4-5.) He notes that § 1201(a) requires all insurance policies in Tennessee to "'include uninsured motorist coverage' in relation to 'bodily injury, sickness or disease, including death, resulting from injury, sickness, or disease' unless specifically rejected in writing by the insured." (*Id.* at 4) (quoting Tenn. Code Ann. § 56-7-1201(a), (a)(2)). By comparison, he argues, UMPD coverage is entirely optional since the statute only states that "[i]f an insured has UMBI coverage, the insurer shall provide 'an opportunity to include uninsured motorist property damage coverage.'"[6] (*Id.* at 5) (quoting Tenn. Code Ann. § 56-7-1201(c)(1) (emphasis added)).

Based on the plain language of the statute, the existing case law, and the potential for absurd results, the Court does not find this distinction persuasive. State Farm correctly notes that To does not cite any cases that have found such a distinction between the procedures governing UMPD and UMBI coverage. Such a distinction appears implausible based on a fair reading of the statute. To argues that UMPD is not "required" because the statute says an insured must only be extended "the opportunity" to include it.  But in reality, it is included by default if the insured does not reject it, exactly like UMBI coverage.[7] Both coverage types may only be rejected by an insured in

---

[6] To notes that all of State Farm's cited cases involve UMBI claims, sometimes with UMPD claims, but never UMPD claims alone. (ECF No. 31, 6) (citing *Thompson v. TRW Autos. United States, LLC*, 2016 U.S. Dist. LEXIS 88141 at *2 (M.D. Tenn. July 7, 2016) (wrongful death); *Perkins v. McKineley*, 1988 Tenn. App. LEXIS 815 *3-4 (Tenn. Ct. App. Dec. 14, 1988) (personal injuries); *Collazo v. Haas*, 2011 Tenn. App. LEXIS 671 at *5-6 (Tenn. Ct. App. Dec. 15, 2011) (personal injuries); *Winters v. Estate of Jones*, 932 S.W.2d 464, 465 (Tenn. Ct. App. 1996) (spinal injuries); *Webster v. Harris*, 727 S.W.2d 248 (Tenn. Ct. App. 1987) (personal injuries); *Gatlin v. Tennessee Farmers Mut. Inc. Co.*, 741 S.W.2d 324, 325 (Tenn. 1987) (personal injuries)).

[7] To's argument here appears to be in conflict with his complaint, which states that "State Farm is legally obligated to offer for purchase uninsured motorist coverage for property damage and bodily injury damage with each Tennessee auto liability policy it sells unless its insured reject the offered uninsured motorist coverage in writing." (ECF No. 1-2, 10.)

writing, and both must be offered to the insured. *Compare* Tenn. Code Ann. § 56-7-1201(a)(2) *with* § 1201(c)(2). The requirement that UMPD coverage be rejected in writing was added by the legislature in a 1982 amendment.  By bringing the standards governing the two coverages into alignment, the legislature evidenced their intent to require insurers to offer both types of coverage. Tenn. Automobile Liab. Ins. § 13:3 (2021 ed.) (discussing "Statutorily required coverages" and noting that "The 1982 amendments . . . control the required types and amounts of UM/UIM coverage that must now be offered in Tennessee."); *see also Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992) ("We are persuaded that when the legislature changed the language in the uninsured motorist statute from 'may reject' to 'may reject *in writing*' and required the writing to be a part of the policy, the legislature evidenced its intent that the only way to eliminate uninsured motorist coverage was a written rejection as a part of the policy."). The cases, writings, and statutes cited rarely draw a hard distinction between UMBI and UMPD coverage. Where they do, both are discussed as "statutorily required coverages," subject to the requirements of the UM statute. Tenn. Automobile Liab. Ins. § 13:3 (2021 ed.)

Other aspects of the statute caution against carving out UMPD coverage from § 1206's procedures. For example, the language of the UMBI and UMPD provisions is mirrored.[8] § 1206 also clearly contemplates actions for UMPD and UMBI coverage being brought under its provisions. Tenn. Code Ann. § 56-7-1206(b) ("If the owner or operator of any motor vehicle that

---

[8] § 1201(a): Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

§ 1201(c)(1):  Every insured purchasing uninsured motorist bodily injury coverage shall be provided an opportunity to include uninsured motorist property damage coverage, subject to provisions filed with and approved by the commissioner, applicable to losses in excess of two hundred dollars ($200). However, the deductible of two hundred dollars ($200) shall not apply if . . .

causes bodily injury **or** property damage to a person insured under this part is unknown . . .") (emphasis added). The statute defines an "uninsured motor vehicle" as "a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or *damage to property* of an insured," Tenn. Code Ann. § 56-7-1202(a)(1). It requires that § 1206 procedures be followed "if any action is instituted against the owner and operator of an uninsured motor vehicle." Tenn. Code Ann. § 56-7-1206(a) (emphasis added). § 1201(e) provides standards for insureds to recover "*under the uninsured motorist provision*" where "the owner or operator of any motor vehicle that causes bodily injury *or* property damage to the insured is unknown[.]" (emphasis added). Leading treatises on Tennessee automobile insurance law note that "the carrier is required to afford UMPD coverage, subject to a $200 deductible," although it is "a less significant coverage, in terms of the size of losses and the volume of litigation generated for practitioners[.]" Tenn. Automobile Liab. Ins. § 16:1 (2021 ed.); *see also Collazo v. Haas*, No. M2011-00775-COA-R3-CV, 2011 WL 6351865, at *4 (Tenn. Ct. App. Dec. 15, 2011) (citing this section of the treatise). This comparative lack of significance likely explains the scarcity of cases brought under § 1206 involving only UMPD coverage, although mixed cases of UMBI and UMPD coverage are plentiful.

Further, bifurcating these claims would lead to absurd results and would defeat the purposes of the statute. As noted, many cases have involved claims for both UMBI and UMPD coverage, and the requirement to bring such cases under § 1206 is implicit throughout such cases. Splitting these claims and allowing a plaintiff to avoid the requirements of § 1206 for some claims related to the same accident would defeat "the whole intent and purpose of the uninsured motorist act," which "is, in essence, to provide Protection by making the insurance carrier stand as the insurer of the uninsured motorist[.]" *Glover*, 468 S.W.2d at 730. Allowing direct suits for UMPD coverage would also defeat "the insurer's interest in keeping its identity anonymous – an interest

specifically recognized and protected by Tenn. Code Ann. § 56-7-1206(a)." *Brewer v. Richardson*, 893 S.W.2d 935, 937 (Tenn. 1995). The Court does not believe the statute would specifically recognize an interest, require a type of coverage pursuant to fulfilling that interest, and then remove that type of coverage from the statute's protections solely by omission or implication.

To's final argument for this distinction cuts against him. He notes that "even with a UMBI claim, Section 1206(d) allows a direct action where the uninsured motorist is known, but not amenable to service." (ECF No. 34, 6.) Although this is correct, the statute explicitly notes when direct actions against an insurer, outside of the procedures of § 1206, are authorized: where the owner and operator of an uninsured vehicle is not amendable to service, not merely where only UMPD coverage is at issue. To characterizes State Farm's argument as advocating for "some absolute bar against suing UM carriers for every kind of UM claim under any circumstance." This characterization is somewhat inaccurate because State Farm argues that § 1206's bar against direct actions applies by its terms: namely, where an insured seeks to rely on "required" coverage and the driver of the uninsured vehicle is known and may be located. The Court agrees. Applying this statute, under the facts of this case, To cannot maintain a direct action against State Farm.

     *b.*  <u>*Must To establish Tyler's Legal Liability to be Entitled to UMPD Benefits?*</u>

State Farm makes another related but somewhat distinct argument in favor of their interpretation that UMPD and UMBI benefits should be treated the same under the statute. State Farm notes that "the insured claimant *must* establish the legal liability of the uninsured tortfeasor *before* he is entitled to collect UM benefits from the UM carrier (who is then only liable to the extent the uninsured tortfeasor is liable)." (ECF No. 20-1, 8) (citing *Perkins v. McKineley*, No. 2-409-82, C.A. No. 1194, 1988 WL 132675, at *6-7 (Tenn. Ct. App. Dec. 14, 1988)). They argue that establishing liability is done by following the process outlined in § 1206: filing suit against

the tortfeasor and serving the insurer as an unnamed defendant, thus allowing liability and coverage issues to be disposed of in the same action. To disagrees. He admits that "[i]n order to recover UMBI benefits, an insured must be 'legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.'" (ECF No. 31, 8) (quoting Tenn. Code Ann. § 56-7-1201(a)). However, he argues that UMPD coverage in the statute is distinct, in that it is "applicable to losses in excess of two hundred dollars ($200)" without any corresponding requirement for legal liability. (*Id.* at 8-9.) To also equates UMPD coverage to Collision coverage, stating that "fault plays no role, which is why purchasing both Collision and UMPD coverage from the same insurer is one factor in assessing no deductible at all. UMPD and Collision are both similar, duplicative coverages." (*Id.* at 10.)

To's main argument is that by omitting the legal liability language from the UMPD coverage section, the legislature "acted purposefully in the subject included or excluded" under the canon of *expressio unius est exclusio alterius* and was making a clear statement that legal liability would not be required. (*Id.* at 9.) However, this interpretive argument appears to conflict with most authority on the subject. "The liability of a UM carrier is limited to '*payment for damages caused by the uninsured . . . motorist* in the ownership maintenance or use of the vehicle,' up to the UM claimant's policy limit." *Collazo v. Haas*, No. M2011-00775-COA-R3-CV, 2011 WL 6351865, at *5 (Tenn. Ct. App. Dec. 15, 2011) (emphasis in original) (quoting *Sherer v. Linginfelter*, 29 S.W.3d 451, 454 (Tenn. 2000)). "If a claimant is unable to establish *fault on the part of the uninsured motorist*, in addition to damages and causation, the UM provider is not obligated to provide benefits." *Id.* To states that "fault plays no role for application of UMPD coverage and a $200 deductible except when no deductible may be assessed at all," but the

17

assessment of the deductible is itself dependent on fault. Tenn. Code Ann. § 56-7-1201(c)(1)(B) ("The deductible of two hundred dollars ($200) shall not apply if . . . [t]he operator of the other vehicle has been positively identified and is solely at fault."). The use of "losses" instead of "damages" in the section does not suggest a wholesale abandonment of a liability requirement. Tenn. Auto. Liab. Ins. § 17:1 ("Uninsured motorist coverage indemnifies only against losses and damages for which an uninsured or under-insured motorist is legally liable.")

Abandoning a fault requirement would also undermine "the whole intent and purpose of the uninsured motorist act," which "is in essence, to provide Protection by making the insurance carrier stand as the insurer of the uninsured motorist." *Glover v. Tenn. Farmers Mut. Ins. Co.*, 468 S.W.2d 727, 730 (Tenn. 1971). This purpose would be undermined because "[a] plaintiff cannot maintain a direct action against a defendant's insurance company in Tennessee 'without first establishing that the insured . . . has become legally obligated to pay damages.'" *Prewitt v. Brown*, 525 S.W.3d 615, 621 (Tenn. Ct. App. 2017) (quoting *Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 52 (Tenn. Ct. App. 2006)). Thus, no-fault UMPD coverage would create a completely unique situation under Tennessee law wherein a plaintiff *can* directly sue an insurance company where that company "stand[s] as the insurer" of a defendant. *Glover*, 468 S.W. 2d at 730. The statute explicitly aimed to avoid this situation, not manufacture it.

The Court is not persuaded, absent explicit language, that the Tennessee legislature intended one form of UM insurance to require legal liability and the other to not, especially where claims for both are required to be brought under an identical procedure, as held above.  State Farm also notes that, irrespective of the statute, the Policy itself "explicitly states State Farm's agreement to pay for property damage that an insured is 'legally entitled to collect[.]'" (ECF No. 33, 6) (citing ECF No. 20-2, 16.) To does not respond to this statement, which accurately reflects the Policy.

18

Accordingly, to be entitled to the UM benefits that To asserts he was denied, he must first establish Defendant Tyler's legal liability through a direct action brought against Tyler, with State Farm as an unnamed defendant. This comports with prior findings by Tennessee courts that "coverage issues are to be litigated and determined in the original action[.]"[9] *Gatlin v. Tennessee Farmers Mut. Ins. Co.*, 741 S.W.2d 324, 325 (Tenn. 1987) (citing *Harvey v. Birchfield*, 535 S.W.2d 334 (Tenn. 1976)).

    *c.*   *Did the Policy Authorize a Direct Action?*

To next argues that he may avoid the requirements of § 1206 because the Policy "expressly authorized a direct action against [State Farm] for UMPD coverage in the policy." (ECF No. 31 at 7.) He bases this argument on the Deciding Fault and Amount sections of the Policy discussed above, which state that "If there is no agreement on the answer to either question in 1.a above, then the insured shall (1) file a lawsuit…against [State Farm] [and] the owner and driver of the uninsured motor vehicle *unless* we have consented to a settlement offer proposed by or on behalf of such owner or driver…." (*Id.*) (citing ECF No. 20-2, 14) (emphasis added). To argues that by

---

[9] *Gatlin* is clear that coverage issues are to be litigated within the original tort action against the uninsured motorist despite the odd procedural process the issue may create:

> Tennessee Farmers argues that to be tried in the same action, the uninsured motorist claim must be litigated either while the jury is out considering the verdict in the tort action, or immediately after the jury returns its verdict; otherwise, the case is terminated and the insured loses its uninsured motorist claim. We find nothing in the Uninsured Motorist Statute or in the Rules of Civil Procedure that imposes this time restriction on the parties. The only requirements are that the issue of coverage be plead and tried before the original action is terminated. An action is not terminated until orders or judgments are entered which adjudicate all claims for relief against all parties. Rule 54.02 of the Tennessee Rules of Civil Procedure. The judgment against Mr. Williams in the tort action did not purport to decide the uninsured motorist coverage, nor did it dismiss Tennessee Farmers as a party to the action, but left those issues pending. Whether this was intentional on the part of the court, or due to an oversight is not shown in the record. The end result is the same. The issue of liability of Tennessee Farmers under the policy of insurance it issued Ms. Gatlin was left unresolved, until trial and the entry of a judgment against Tennessee Farmers. This was done ultimately in the original tort action. The independent suit filed by Ms. Gatlin was ineffective either to raise the issue of uninsured motorist coverage, or to defeat Ms. Gatlin's claim raised in the original action. In short, it was superfluous.

*Gatlin*, 741 S.W.2d at 326.

accepting "policy limits from Defendant Tyler's insurance carrier for property damage and waiv[ing] its rights to subrogation . . . State Farm waived the procedural requirements, to the extent they were applicable, requiring suit against the uninsured driver." (*Id.*) State Farm disputes this, noting that there is no express waiver language in the Policy and arguing that a subrogation release is not a settlement. (ECF No. 33, 4.)

The Court agrees with State Farm. A review of the policy does not reveal any "express" waiver of direct action protections. To primarily relies on language from *Gaston v. Tennessee Farmers Mutual Insurance Co.* for this argument, where the Tennessee Supreme Court noted that "the party who is the beneficiary of a statute can waive that benefit if it is not in violation of public policy or to the detriment of a third party." 120 S.W.3d 815, 821 (Tenn. 2003) (citing *Black Diamond Coal Mining Co. v. Rankin*, 98 S.W.2d 311, 312 (1936)). However, the Court there did not find that the insurer had so waived the protection of § 1206, but merely preserved the question for the jury due to factual circumstances not present here.[10] The closest the Policy comes to a waiver provision involves a situation where State Farm consents to a settlement offer proposed by or on behalf of the uninsured driver, but no such circumstances are alleged here. To argues that State Farm's waiver of its subrogation rights amounts to such a settlement. However, the two are clearly distinct given that To's claims against Tyler are not settled and are indeed at issue in the present case. To has not plausibly alleged that State Farm has waived the benefit of § 1206.

*4.  Does § 1206 Apply to an "Illegal Deductible" Claim?*

---

[10]*Gaston* involved a claim brought by Gaston against tortfeasor Tim Wise. Gaston settled her case with Wise before attempting to recover from under-insured motorist coverage she had with her insurer, Tennessee Farmers. Tennessee Farmers then declined to pay due to her settling without their written permission. Evidence revealed that Tennessee Farmers had not contacted Gaston to inform her that settlement would void her right to coverage despite being aware of her effort to settle the claim and despite being aware that they suffered significant exposure under the policy. The settlement prevented Gaston from directly suing Wise as required by § 1206. "Given that the purpose of the uninsured motorist statutes is to protect drivers from uninsured and under-insured motorists, [the Court] believe[d] that a direct action against Tennessee Farmers was proper *under the unique circumstances* of this case." *Gaston*, 120 S.W.3d at 821 (emphasis added).

State Farm states that because To cannot maintain direct actions against them under § 1206, all present direct claims against them should be dismissed. To, in addition to arguing for the above interpretation of § 1206, also argues that even if § 1206 and the fault requirement apply, they "have no application for the assessment of an illegal deductible." (ECF No. 31, 11.) To notes that under § 1201(c), "State Farm could not assess a deductible higher than $200 for UMPD coverage," since "all provisions of the Tennessee uninsured motorist statute are made part of all insurance policies issues issued [sic] for delivery in Tennessee." (*Id.*) (citing *Dunn v. Hackett*, 833 S.W.2d 78, 82 (Tenn. Ct. App. 1992)). By assessing a $500 deductible, To claims that State Farm violated § 1206(c), and that State Farm is now arguing that he "must sue an uninsured motorist to get back an illegal deductible collected by Defendant State Farm." (*Id.*) The Court believes that To's claim regarding an alleged illegal deductible would nevertheless still need to be litigated according to the requirements of § 1206. A few facts inform this ruling.

First, there is no need to allege that the provisions of § 1201(c) somehow became part of the Policy through operation of law. The Policy already contains express language that directly mirrors § 1201(c)'s requirement that required UMPD coverage, "subject to provisions filed with and approved by the commissioner, [is] applicable to losses in excess of two hundred dollars ($200)." *Compare* Tenn. Code Ann. § 56-7-1201(c)(1) *with* (ECF No. 20-2, 16.) If State Farm assessed a deductible in excess of $200, that assessment would violate § 1201(c) and the Policy itself, by its own terms. In other words, there is no point where the Policy and the statute directly conflict; they are in fact in alignment. Second, the Policy's $200 deductible is listed as an "exclusion" under the Uninsured Motorist Vehicle Insurance Section, along with other situations in which State Farm states "THERE IS NO COVERAGE." (ECF No. 20-2, 16.) Neither party argues a distinction between a deductible and an exclusion in this instance. Third, the Policy clearly

states under its Insuring Agreements that "[u]nder Uninsured Motor Vehicle Coverage (Bodily Injury and Property Damage), we will pay compensatory damages for bodily injury and damages for property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (*Id.*) The Policy contemplates avoiding litigation if State Farm and the insured agree that "the insured [is] legally entitled to collect compensatory damages[,]" and agree on "the amount of the compensatory damages that the insured is legally entitled to collect." However, the Policy also states that if State Farm and the insured disagree on either of these questions, then a lawsuit must be filed against State Farm and "the owner and driver of the uninsured motor vehicle unless [State Farm] have consented to a settlement offer proposed by or on behalf of such owner or driver," and "any other party or parties who may be legally liable for the insured's damages." (*Id.*)

Taking all of these facts into consideration, the Court believes that To's claim for an excessive deductible, which is a breach of contract claim, must be pursued according to § 1206, and thus is improperly brought in its current form. For purposes of this motion, the $500 deductible is undisputed. But it is clear this is a *coverage issue* under the Policy, given its presence as an exclusion. Coverage issues regarding UM insurance "are to be litigated and determined in the original action," that is, an action brought according to § 1206. *Gatlin v. Tennessee Farmers Mut. Ins. Co.*, 741 S.W.2d 324, 325 (Tenn. 1987). The present case involves multiple coverage issues, since State Farm argues that they owe no payments for damages under the Policy until Tyler's legal liability for those damages is established and cannot have assessed a deductible for benefits they do not owe. This seems clear on the face of the Policy, but nevertheless, there is a disagreement over the Policy's coverage that the statute and Tennessee Supreme Court contemplate being addressed in the original action brought under § 1206. An assessment of a $500

deductible may violate § 1201(c) as well as the terms of the policy, but there is no independent cause of action to sue for violations of § 1201(c). If State Farm's assessment of the $500 deductible somehow violated § 1201(c) and *not* the Policy, the Policy would be in violation of § 1201(c)(1), which *would* potentially lead to the violative portions of the Policy being superseded by the statute, and the $200 deductible being made part of the Policy through operation of law. *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Either way, the result is the same: the deductible would become a coverage issue that would need to be litigated according to § 1206.

Due to the above, the Tennessee UM Statute operates to bar To's direct claims against State Farm. Accordingly, State Farm's motion is **GRANTED** on all direct claims against it.

## IV.    CONCLUSION

The remainder of State Farm's motion involves To's alleged entitlement to loss of use damages under Tennessee law and whether his causes of action against State Farm and Tyler are well plead. However, the Court does not believe these issues should be considered at this time. It is clear from the above that To's complaint was brought in violation of § 1206 by bringing direct claims against State Farm and naming the company as a defendant in his complaint. When confronted with similar situations, Tennessee courts have stated that "the proper disposition of [the insurer's] motion to dismiss should [include] an outright dismissal of the entire case with leave to refile it against only the proper parties, or to order the name of [the insurer] to be expunged from all pleadings and records in the cause." *Webster v. Harris*, 727 S.W.2d 248, 251 (Tenn. Ct. App. 1987); *see also Bates v. Greene*, 544 S.W.3d 345, 352 (Tenn. Ct. App. 2017) ("It is *incumbent* that the suit be instituted against an uninsured motorist with service thereafter upon the insured's uninsured motorist carrier.") (quoting *Buck v. Scalf*, No. M2002-00620-COA-R3-CV, 2003 WL 21170328, at *2 (Tenn. Ct. App. May 20, 2003) (emphasis added)). The second option appears

impracticable in this case, as the majority of To's complaint and his filings relate exclusively to State Farm. Further, To and State Farm's arguments regarding the propriety of loss of use damages strike the court as premature, given that he has not yet established the legal liability of Tyler for the accident at all. If Tyler is found liable, that would be the time to determine exactly what damages he would be liable for. State Farm does argue that To cannot assert a claim for loss of use under any circumstance, regardless of Tyler's liability, but this involves interpretations of Tennessee law and the Policy's terms that should be litigated under a case brought pursuant to § 1206. This procedure will allow for more extensive briefing on the loss of use claims and will help clarify and narrow the issues.

Accordingly, the Court **GRANTS** State Farm's Motion to Dismiss, but gives To leave to refile the case against the proper parties, namely Tyler, with State Farm served as an unnamed defendant. Such an action will clarify the remaining issues and be the proper place to determine issues related to Tyler's liability, the damages To is potentially entitled to, and any other issues arising from the accident itself. In the present case, State Farm's Motion to Strike Class Allegations Motion to Stay, Motion to Bifurcate, and the Joint Motion for Discovery are also **DENIED AS MOOT** due to the entry of this order.

      **IT IS SO ORDERED** this 20th day of October 2022.

*s/ John T. Fowlkes, Jr.*
JUDGE JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
